ADAMS *et al. v.* POWELL.

1. The source of the plaintiff's title being a deed from Austin to Dorsey, and, so far as appears, this title not being connected with any of the Goodwins, and there being no indication how Austin's title originated, there was no evidence on which to base a charge that if the jury believed that this title originated in the Goodwins and passed from them to the others until it came down to plaintiff and defendant, there was a common owner from whom both claimed, and that there was no dispute as to the title to this lot of land being in the Goodwins and those who claimed under them.   (R.)

2. Under the facts in this case, it was error to charge that if the defendant's deed specified 100 acres, more or less, of the north half of this lot of land, and the plaintiff's deed specified ninety-three acres in the south half of it, the jury were then to find how many acres were in the lot, and if the defendant had 100 acres without taking in the twenty acres in dispute, and the plaintiff did not have ninety-three acres without including the twenty acres, then he would be entitled to recover the twenty acres. (R.)

April 20, 1891.

Ejectment.   Title.   Charge of court.   Boundaries. Before Judge RICHARD H. CLARK.   DeKalb superior court.   August term, 1890.

Thomas S. Powell as the sole heir of his wife, Julia L., brought complaint for land against Adams and Strong (real defendant) for twenty and a fraction acres of land lot 200 in the 18th district of DeKalb county.

A verdict was rendered for the plaintiff for the premises in dispute. The defendants moved for a new trial on the general grounds, and for errors in the charge of the court, as to which see the decision. The motion was overruled.

From the evidence the following appeared: In 1838 ·John·Dobbs made to Solomon Goodwin a deed to the entire lot 200, except fifty acres in the southeast corner formerly conveyed to one Lansford. Solomon Goodwin died probably very near the date of this deed, and two of his sons, Starling and Solomon Goodwin, went into possession of the land which their father had owned. These brothers divided the land, Starling taking the southern and Solomon the northern part. The land in dispute lies about midway of the tract as originally owned by Solomon Goodwin, Sr. If the line claimed by Strong is the correct line, there are 72.6 acres in Powell's tract and 117.6 acres in the Strong tract; but if the line claimed by Powell is correct, there are 93 acres in Powell's tract and 97.2 acres in the Strong tract. A survey indicated that in the Lansford tract, using the line recognized as the dividing line between Lansford and Starling Goodwin, the land of Starling being adjacent to the Lansford land, there were really 51.8 acres. This lot, containing 242 acres, is much larger than the ordinary land lot in that section of the State. The title claimed by Strong was as follows: In 1862 Solomon Goodwin gave a bond for titles to Green B. Bridwell for the north half of the land lot " containing one hundred acres more or less," and in 1864 the executor of Solomon Goodwin made a deed to Bridwell in pursuance of this bond for titles. In the same year Bridwell made a deed to John M. Dorsey for the north half of the land lot " containing one hundred acres more or less." On March 4, 1872, Mary E. Dorsey made to James O. Powell a deed to

the north half of the land lot " containing one hundred acres more or less." This deed was recorded March 13, 1872. On June 7, 1887, W. J. Houston, as administrator of James O. Powell, made a deed to Strong for the north half of the land lot " containing one hundred acres more or less, and being that part of said lot formerly owned by Solomon Goodwin and conveyed by James R. Smith, sheriff of DeKalb county, as the property of Solomon Goodwin, in deed made June 1, 1869, and recorded June 9, 1869," to James O. Powell. It appeared that on December 28, 1861, three justice court judgments were rendered against Solomon Goodwin and another, and that executions issuing from these judgments were, on May 4, 1869, levied upon " the northeast half of land lot number 200, 18th district of DeKalb county, as the property of Solomon Goodwin, deceased [he died in 1864], containing ninety-six acres more or less." The land levied on was sold under the levy to James O. Powell and others, but the sheriff's deed was made to James O. Powell as above stated, and in it the land was described as in the levy. On September 14, 1869, Mary E. Dorsey filed her bill against James O. Powell and others, seeking to recover the land sold by the sheriff, and alleging that she was a *bona fide* purchaser of the land and had been in the actual possession of it more than four years before the levy of the *fi. fas.* The answer to this bill denied the charges and alleged that the complainant had never been in the actual possession. This cause resulted in a consent verdict and decree on April 2, 1872, to the effect that the judgments under which the land had been sold were notice and subsisting liens upon the land, and that the title of the purchasers at the sheriff's sale was good. The agreement under which this result was reached was that the defendants should pay to Mrs. Dorsey $150, and that she should make a conveyance.

The money was paid her, and she made the deed to J. O. Powell above mentioned. Houston, as administrator of J. O. Powell, had made a bond for title to Cheshire in 1880, and Cheshire, having conveyed his interest to Strong, Houston made the deed to Strong above stated. The defendants also introduced a deed from James M. Austin to John M. Dorsey, made April 6, 1865, " for the. southwest part of lot number 200 in the 18th district of DeKalb county, containing ninety-three acres more or less, bounded east by L. Lansford, west by the district line, north by the remaining part of said lot." This is the only one of the deeds introduced by the defendants, as they appear stated in the record, in which boundaries are given.

The documentary evidence of title relied on by plaintiff was as follows:   A deed from Mary E. Dorsey, administratrix of John M. Dorsey, to Robert M. Brown, made January 1, 1867, and recorded August 17, 1869, " for the southwest part of lot·of land number 200 in the 18th district of DeKalb county, containing ninety-three acres more or less .  .   also the north half of lot of land number 200 in the 17th (?) district of DeKalb county, containing 100 acres more or less." Deed from Brown to Mary E. Dorsey, made January 1, 1867, and recorded August 17, 1869, reconveying the same property.   Deed from Mary E. Dorsey to John R. Wallace, made June 2, 1871, and recorded August 25, 1873, "for the west part of land lot number 200 in the 18th district of DeKalb county, containing. ninety-three acres more or less." (The boundaries are not mentioned in these deeds as stated in the record.)   Deed from Wallace to John Hager, made August 22, 1872, " for the southwest part of lot of land number 200 in the 18th district of DeKalb county, containing ninety-three acres more or less, bounded on the east by L. Lansford, west by the district line, north by the remainder of said lot,

south by Matheson's land." And a deed from John and Christiana Hager to Mrs. Julia L. Powell, made September 22, 1876, in which the land is described as in the last mentioned deed, except that it is called the southwest half of the lot. The plaintiff also introduced a deed made by Strong to a Mrs. Edwards in 1889, conveying " one hundred acres more or less" of land lot 200. In this deed the south line of the land conveyed by it is described as the line dividing the land conveyed from that owned by T. S. Powell. There was evidence that the land conveyed by this deed did not include seventeen acres of the woodland in dispute, but lay north of it.

The evidence was conflicting as to what was the true dividing line between the original Starling Goodwin and Solomon Goodwin tracts, and also as to what acts of ownership had been exercised over the tract in dispute. The land in dispute was mainly woodland and has never been cleared for cultivation. It did not appear to whom Starling Goodwin conveyed, and he is still alive. He left the land about the time of the war. There was evidence for the plaintiff that probably some time during the war, after Starling Goodwin moved away from the premises, one Guess moved into the house which had been occupied by Starling Goodwin and which was situated very near the line of the disputed tract ; that Guess died there ; that Mrs. Guess and her children continued to live there for some time, but whether she rented the land or not did not appear ; that she moved away about 1871, and soon afterwards Hager moved in, and Hager was in possession when the deed was made to Mrs. Powell.

On behalf of the defendants there was testimony tending to show that neither Mrs. Dorsey nor her husband had ever lived on the land ; that after Mrs. Guess moved away, one Staples lived on it a year or two

before Hager moved in; that the land as originally owned by Solomon Goodwin, Sr., was not equally divided as to quantity between the brothers, but that as Starling Goodwin got the best land in the division his brother Solomon was allowed the larger number of acres; that Starling Goodwin recognized this fact, and recognized a dividing line which was very different in location from the line as claimed by plaintiff, and was very nearly the line as claimed by defendants.

CANDLER & THOMSON, for plaintiffs in error.

HALL & HAMMOND, *contra*.

SIMMONS, Justice.

1. The record shows that the source of title of Powell, the plaintiff in the court below, was a deed from James M. Austin to John M. Dorsey, made on April 6th, 1865, to the southwest part of lot number 200 in the 18th district of DeKalb county, containing 93 acres more or less; and that the source of the defendant's title was a deed from Dobbs to Goodwin and from Goodwin to Bridwell, etc. As far as appears from the record, the plaintiff's title was not connected with either Solomon or Starling Goodwin. There is no indication in the record how Austin's title originated. The court therefore erred in charging the jury that if they believed that this title originated in the Goodwins, and passed from the Goodwins to the others until it came down to Powell and Strong, there was a common owner from whom both claimed; and that there was no dispute as to the title to this lot of land being in the Goodwins and those who claimed under the Goodwins. As we have sworn, there was no evidence on which to base this charge.

2. We think the court erred also in charging the jury, under the facts of this case, that if Strong's deed specified 100 acres, more or less, of the north half of

this lot of land, and Powell's deed specified 93 acres in the south half of the lot of land, they were then to find how many acres were in the lot, after deducting the Lansford tract; and that if Strong had 100 acres without taking in the 20 acres in dispute, and Powell did not have 93 acres without including the 20 acres, then Powell would be entitled to recover the 20 acres sued for. The record discloses that Solomon Goodwin, Sr., purchased the lot of land from Dobbs in 1838, and that he gave it to his two sons, Solomon and Starling. The evidence shows that these sons divided the land between them, Solomon taking the north or northeast half, and Starling the south or southwest part of the lot, and that they resided on their respective parts for many years, recognizing the line established by them in the beginning of their possession. In all the deeds to that portion of the land which was assigned to Solomon Goodwin, it is described as the north or northeast *half* of lot number 200; and in all the deeds to that part of the lot which was assigned to Starling, the land is described as the south or southwest *part* of lot 200, with the exception of the deed from Hager to Julia Powell, which describes it as the southwest half of said lot. This is an indication that the land was not equally divided between the two brothers, but that Solomon got the north half, and Starling got the balance that was left after deducting the 50 acres of Lansford, or the south or southwest part of the land. This seems to be a recognition that there was a boundary line established between the two brothers, and that this boundary was recognized by subsequent purchasers. We think, therefore, that upon the next trial of the case, the jury should be instructed to inquire whether these Goodwin brothers did establish a boundary line between them, and whether it was recognized by them, and whether sub-

sequent purchasers and grantors recognized the same boundary line. If such a line was established and assented to by different owners for a sufficient length of time, and there were a hundred acres or more on the north side of the line thus established, and Strong purchased the land on the north side, he would be entitled to hold it, although there were more than a hundred acres on that side; for his deed calls for 100 acres, more or less. If, however, there was no such line established, or, if established, it was not assented to or recognized by the various parties claiming the two portions of the lot, then of course this rule will not prevail; and the rule would be that if there was no line established and recognized, and Strong had his hundred acres, and it took twenty acres to make Powell's ninety-three, Powell would be entitled to recover the same, provided his deed covered the twenty acres. In other words, if there was an actual physical boundary between the two portions of the lot, and Strong's purchase included the land up to that actual physical boundary, then he would be entitled to hold the land up to that boundary, although it may include more than 100 acres. If there was no such boundary line, but it was an ideal or imaginary one, the jury should find from the evidence its location, and if Powell's purchase covers the land up to that location or line, and the land in dispute is on Powell's side of that line, then he would be entitled to recover. This would be the rule in the contest between the Goodwin title and the Dorsey title.

If, however, both parties claim under Dorsey as the common grantor, and Mrs. Dorsey sold the land by an actual physical boundary, Powell would be entitled to the land up to that boundary, whether it was 93 acres or not. If the land was not sold by an actual physical boundary, but an ideal or imaginary one, then, in our

v 87-10

opiniou, Powell would be entitled to 93 acres, although it might leave Strong short of his 100 acres, because Mrs. Dorsey sold the south part of the land to Wallace, under whom Powell claims, before she sold the north part to James O. Powell, under whom Strong claims.

Of course, neither of these rules would apply if either of the parties or those under whom they hold had had exclusive adverse possession of the 20 acres a sufficient length of time to give title under the statute.

*Judgment reversed.*